**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF ALASKA**

Filed On
1/19/10

In re:

GAIL E. ACKELS,

        Debtor.

Case No. F09-00842-DMD
Chapter 7

INVOLUNTARY

**MEMORANDUM ON INVOLUNTARY PETITIONS**

      Delmar Ackels is a miner. He became involved in a dispute with Goldrich Mining Company over certain gold mining claims which was litigated extensively in state superior court. The final judgment in the case was entered June 11, 2009.[1] Goldrich was found to be the proper owner of a number of the contested mining claims and was awarded a monetary judgment of $115,449.50.[2] The judgment was entered against Delmar as well as his wife Gail.[3] The Ackels appealed the judgment but did not obtain a stay. Goldrich propounded judgment debtor discovery against the Ackels.[4] Goldrich's Interrogatory No. 14 asked the Ackels to identify "all loans, promissory notes, deeds of trust, security agreements,

---

[1] Goldrich Mining Company's Exhibit P.

[2] *Id.*

[3] *Id.*

[4] Goldrich Mining Company's Ex. B.

or other evidence of indebtedness to which you are a party."[5] Delmar Ackels' hand written response listed just six debts:

> Owe the following people for money borrowed:
> Pete Wentz - $30,000
> Fred Wilconson - two 20 ounce gold bars
> Hank Zawacki  $20,000
> Jim Madonna   $8,100
> Lorane Mobley $32,197
> Mortgage owed bank for residence at 1725 Roosevelt Street, Fairbanks.[6]

Gail Ackels adopted her husband's response. Based upon these answers, Goldrich filed involuntary chapter 7 petitions in bankruptcy against Delmer M. Ackels and Gail E. Ackels on November 12, 2009.[7]

When a person has fewer than 12 creditors, an involuntary petition can be commenced against that person by just one petitioning creditor.[8] The claim of the petitioning creditor cannot be contingent as to liability or the subject of a bona fide dispute.[9] The Ackels contend that Goldrich cannot be that one creditor because its claim is subject to a bona fide dispute. The "dispute" is the fact that Goldrich's judgment is on appeal to the Alaska Supreme Court. I respectfully disagree with the Ackels. I find concur with the cases cited

---

[5] *Id.*, Interrog. No. 14.

[6] Answer to Interrogatory 14, page 17 of Goldrich Mining Company's Exhibit B.

[7] Case No. 09-00841, Docket No. 1; Case No. 09-00842, Docket No. 1.

[8] 11 U.S.C. § 303(b)(2).

[9] 11 U.S.C. § 303(b)(1).

by Goldrich which found no bona fide dispute existed when the petitioning creditor was the holder of an unstayed, final judgment on appeal.[10] Goldrich's claim is not contingent as to liability nor subject to a bona fide dispute. It has standing to bring an involuntary petition against the debtor. The petitions will stand if the Ackels have fewer than 12 creditors whose claims are "not contingent as to liability or the subject of a bona fide dispute as to liability or amount."[11]

Contrary to their answers to Goldrich's Interrogatory No.14, the Ackels now maintain that they each have twelve creditors or more. Included in their amended list of creditors are two debts due their attorneys: Thomas Wickwire and the firm of Weiner and Gazewood. The debt due Wickwire arises out of their state court jury trial and appeal with Goldrich. The debt due Gazewood arose prior to the involuntary petition for relief, for work done on a contempt complaint arising out of a prior bankruptcy.[12] Goldrich contends that the attorneys must be considered non-statutory insiders. But, as noted by the court in *Kepler v. Schmalbach (In re Lemanski)*,[13] "[a]ttorneys are not automatically considered to be insiders under the Code. An attorney is an insider if as a matter of fact, he exercises such control or

---

[10] *In re Smith*, 415 B.R. 222 (Bankr. N.D. Texas 2009); *In re AMC Investors, LLC,* 406 B.R. 478 (Bankr. D. Delaware 2009); *In re Drexler*, 56 B.R. 960 (Bankr. S.D. New York 1986).

[11] 11 U.S.C. § 303(b)(1).

[12] *Ackels v. Goldrich Mining Co.*, Adv. Proceeding No. F09-90014-DMD.

[13] 56 B.R. 981 (Bankr. W.D. Wis. 1986).

3

influence over the debtor as to render their transactions not arms-length."[14]  There is nothing in the record to demonstrate that either Wickwire or Gazewood had such control or influence over the debtors that their transactions were not arms-length.  Wickwire and Gazewood may be included as creditors for determining eligibility under § 303.

Both Delmer and Gail have at least nine creditors.  They include the six originally named in their responses to Interrogatory No. 14, plus the debts to the two attorneys and the Goldrich judgment.  But the Ackels contend they have additional debts as well.  The mortgage on their home is with Chase Home Finance, L.L.C..  Payments on the mortgage are sent to Columbus, Ohio.  The Ackels also list credit card debt with Chase Bank USA.  This obligation appears to be separate from the mortgage debt to Chase Home Finance, L.L.C.  Payments are sent to a different Ohio address in Westerville, not Columbus.  The credit card debt is listed as an individual liability of Delmer Ackels in the Ackels' Exhibit 1, a credit report.  I conclude that this is a debt of Delmer Ackels individually, and not a debt of Gail's.  I further conclude that it belongs to a different creditor than the mortgage obligation to Chase Home Finance, L.L.C.

The Ackels list a debt to Denali Alaskan Federal Credit Union as another liability.  However, Lorane Mobley took out this loan.  The Ackels may be making the payments for her, but they are not primarily liable on the debt.  Denali Alaska may not be

---

[14] *Id.* at 983.

4

considered as a creditor in addition to Lorane Mobley, who is already being counted as a creditor in the tally here.

There are a number of additional credit card creditors listed by both Delmer and Gail as joint liabilities. They include Capital One, First Equity, and Household Bank or HSBC. I find that each of these obligations is an obligation of Delmer Ackels. Capital One and Household Bank are listed as liabilities in his credit report. Gail is not listed as an authorized user on these cards nor is there any indication that she is jointly liable from the credit report found in Exhibit 1. No complete credit report for Gail Ackels was submitted into evidence.

In summary, I conclude that Delmer Ackels has thirteen creditors and Gail Ackels has nine creditors. The involuntary petition against Delmer must be dismissed. There are additional requirements to be met before Gail can be adjudicated as an involuntary debtor, however. Goldrich must prove that Gail is generally not paying her debts as they become due, "unless such debts are the subject of a bona fide dispute as to liability or amount."[15] Because Goldrich is the holder of an unstayed, final judgment on appeal, its debt is not subject to bona fide dispute. Gail has not paid the judgment. But what of her eight other creditors? Gail has been prepaying the Chase Home Finance, L.L.C., mortgage. Four other people, Pete Wentz, Fred Wilconson, Hank Zawacki and Jim Madonna, do not appear

---

[15] 11 U.S.C. § 303(h)(1).

5

to be receiving payments. Wentz was due sixty ounces of gold on October 1, 2009.[16] Wilconson was due twenty ounces of gold on October 1, 2009.[17] Zawacki was due thirty ounces of gold on October 1, 2009.[18] Madonna was due some payment on October 1, 2009, although the amount of gold to be paid is nebulous.[19] Lorane Mobley is owed at least $32,197.00, but there is no due date for this obligation, which trails back to 2005. No evidence was submitted showing that Gail has been paying her attorney's fees as they accrue. The fact that she has been timely paying her mortgage is insufficient to find that she has been generally paying her debts as they become due. The weight of the evidence clearly indicates that she has not been paying her debts in a timely manner.

Despite these findings, should the court abstain from adjudicating Gail as an involuntary debtor? 11 U.S.C. § 305(a)(1) allows a court to dismiss and abstain from a case if "the interests of creditors and the debtor would be served by such dismissal." Gail's placement in a chapter 7 proceeding really does not accomplish anything for Goldrich. Goldrich seeks an end to the costly litigation with the Ackels. A bankruptcy proceeding against Gail alone will not stop the appeal. Delmer will continue to prosecute the appeal, with or without her. Goldrich's goal will not be served. Nor will the placing of Gail alone in chapter 7 serve the interests of her remaining creditors. Their only hope of repayment is

---

[16] Goldrich's Ex. B, at 44.

[17] *Id.* at 42.

[18] *Id.* at 37.

[19] *Id.* at 46.

6

a reversal on appeal and the resumption of active gold mining by the Ackels. Placing Gail in chapter 7 will result in the discharge of their debt in what appears to be a no-asset case.[20] And Gail's meagher income from Social Security, $498.00 a month, cannot fund a chapter 13 plan. I conclude that the overall interests of both Gail and her creditors would be served by dismissal and abstention, rather than continuance of a chapter 7 bankruptcy.

The Ackels seek a variety of relief against Goldrich. They seek costs and attorney's fees against Goldrich under 11 U.S.C. § 303(i), which gives the court discretion to make such an award. Section 303(i) is not mandatory and I am not inclined to award attorney's fees to the Ackels. They caused the filing of the petitions through their incomplete and erroneous answers to Goldrich's interrogatories. There is no reasonable basis for an award of fees under such circumstances. Nor have the Ackels in any way established a case for bad faith or an award of compensatory or punitive damages against Goldrich. Their counterclaims for such damages will be dismissed, with prejudice.

I conclude that the involuntary petitions filed against Gail and Delmer Ackels should be dismissed. The Ackels' counterclaims for attorney's fees and punitive and compensatory damages will also be dismissed, with prejudice. Appropriate orders and judgments will be entered.

---

[20] Gail may have some interest in the Dozers and other mining equipment at the remote mine site. The costs of moving the equipment to Fairbanks could exceed the value of the equipment and at best Gail would only have a 50% interest in any sales proceeds.

7

DATED: January 19, 2010.

                                                              BY THE COURT

                                                              /s/ Donald MacDonald IV
                                                              DONALD MacDONALD IV
                                                              United States Bankruptcy Judge

Serve:       A. Tinker Bray, Esq.
                  J. Gazewood, Esq.
                  U. S. Trustee

                          01/19/10